## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HYUNDAI STEEL COMPANY,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>    Defendant. | Court No. 24-00190 |

## COMPLAINT

1. Plaintiff Hyundai Steel Company ("Plaintiff" or "Hyundai Steel") by and through its counsel hereby alleges and states as follows:

## JURISDICTION

2. Plaintiff brings this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii) to contest certain aspects of the final results of the administrative review of the countervailing duty ("CVD") order on certain cut-to-length carbon-quality steel plate ("CTL plate") from the Republic of Korea, Case No. C-580-837, issued by the International Trade Administration of the United States Department of Commerce ("Commerce"). *Certain Cut-to-Length Carbon-Quality Steel Plate From the Republic of Korea: Final Results of Countervailing Duty Administrative Review; 2022*, 89 Fed. Reg. 73,626 (Dep't Commerce Sept. 11, 2024) ("*Final Results*") and accompanying Issues and Decision Memorandum ("Final Decision Mem."). The challenged review covered entries in calendar year 2022.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) because this action is commenced pursuant to 19 U.S.C. § 1516a.

**PARTIES AND STANDING**

4. Plaintiff is a manufacturer and exporter to the United States of CTL plate from Korea, and therefore is an interested party within the meaning of sections 771(9)(A) and 516A(f)(3) of the Act, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3). Plaintiff was also a party to the administrative proceeding that led to the determination that is being challenged herein, as Plaintiff was selected by Commerce as a mandatory respondent, responded to all of Commerce's questionnaires, and submitted a case brief to Commerce. Accordingly, Plaintiff has standing pursuant to 28 U.S.C. § 2631(c) to commence this action.

**TIMELINESS OF THE ACTION**

5. On September 11, 2024, Commerce published in the *Federal Register* the *Final Results* of the 2022 administrative review of the CTL plate CVD order. 89 Fed. Reg. at 73,626. Plaintiff timely filed a Summons on October 10, 2024, and this Complaint is filed within thirty days of the filing of the Summons, pursuant to 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of this Court.

**STATEMENT OF FACTS**

6. On April 11, 2023, Commerce initiated an administrative review of the CVD order on CTL plate for the 2022 period of review ("POR") for the four requested companies. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 21,609 (Dep't Commerce Apr. 11, 2023). On June 14, 2023, Commerce selected Hyundai Steel as a mandatory respondent in this administrative review and issued an Initial Questionnaire. *See* Memorandum from Kyle Clahane, International Trade Compliance Analyst, Office III, AD/CVD Operations, "Countervailing Duty Administrative Review of the Countervailing Duty Order on Certain Cut-to-Length Carbon-Quality Steel from the Republic of Korea; 2022: Respondent

Selection" (June 14, 2023); Letter from David Lindgren, Program Manager, Office III, AD/CVD Operations, "Administrative Review of Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Countervailing Duty Questionnaire" (June 14, 2024) ("Initial Questionnaire"). On August 11, 2023, Hyundai Steel filed its Initial Questionnaire response. *See* Letter from Morris, Manning & Martin, LLP, "Certain Cut-to-Lenth Carbon-Quality Steel Plate from the Republic of Korea, Case No. C-580-837: Hyundai Steel's Initial Questionnaire Response" (Aug. 11, 2023) ("Hyundai Steel's IQR"). The Government of Korea ("GOK") filed its response to the Initial Questionnaire on August 11, 2023. *See* Letter from Yoon & Yang LLC to Sec'y Commerce, "Administrative Review of Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Response to the Initial Questionnaire" (Aug. 11, 2023) ("GOK IQR").

7. One of the programs being reviewed by Commerce was the alleged provision of electricity for less than adequate remuneration ("LTAR"). *See* Initial Questionnaire at 17-22. Although Commerce's analysis is complex and focuses upon whether the Korea Electric Power Corporation's ("KEPCO") electricity prices are "consistent with market principles," the primary focus of the analysis is whether KEPCO fully recovers its cost and profit. *See, e.g.,* Final Dec. Mem. at 11-13. Commerce thus required the GOK to submit KEPCO's cost data as part of its questionnaire response.

8. In its Initial Questionnaire, the GOK provided the KEPCO data for calendar year 2021 because at the time that it submitted its response the 2022 POR cost data was not available. *See* GOK IQR at Exhibit E-9. The GOK subsequently submitted the KEPCO 2022 cost data in response to a supplemental questionnaire. *See* GOK IQR at Exhibit E-9; Letter from Yoon & Yang LLC to Sec'y Commerce, "Administrative Review of Certain Cut-to-Length Carbon-

Quality Steel Plate from the Republic of Korea: Response to the Supplemental Questionnaire" (Jan. 25, 2024) ("GOK 3SQR") at Exhibit E-9.1.

9. In its Initial Questionnaire, the GOK also provided confidential usage data during 2022 for the steel industry and the ten largest electricity consuming industries. *See* GOK IQR at 42-23. This data was requested by Commerce for purposes of its *de facto* specificity analysis. In its response to a supplemental questionnaire, the GOK subsequently submitted a revised version of the ten largest industries consuming electricity in 2022, with the difference being that in the revised data the industries were classified in accordance with the Korea Standard Industrial Classification ("KSIC"). *See* Letter from Yoon & Yang LLC to Sec'y Commerce, "Administrative Review of Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Response to the Supplemental Questionnaire" (Nov. 1, 2023) ("GOK 2SQR") at 1-2. The GOK explained that the data originally submitted in the GOK IQR are "inaccurate in the sense that each category covers industries that do not match with their names. For example, the 'Steel' category covers not only steel but also copper and non-ferrous metal, aluminum, etc. The same is true for the 'semi-conductor' category. It does not only cover semi-conductors but also electricity components, communication and broadcasting apparatuses, etc." GOK 2SQR at 2. The GOK also confirmed that the revised data submitted in the 2SQR use the KSIC, which is the "{o}fficial industry classification scheme in Korea" and is "used by various public and private entities within the GOK." *Id.* The revised data in the GOK 2SQR showed that the steel industry's consumption of industrial electricity was a lower percentage than using the original data from the GOK IQR. *Id.*

10. The GOK also explained that KEPCO introduced a Fuel Cost Adjusted Charge ("FCAC") and the cost pass-through tariff system in January 2021 to better account for

4

fluctuations in fuel prices.  GOK IQR at Exhibit E-2 at 5.  The FCAC reflects changes in fuel prices every quarter to the prices that KEPCO charges to its customers.  If KEPCO is unable to charge the entire fluctuations in fuel prices to its customers in a given quarter due to certain built-in limits on the amount prices can be increased each quarter, the cost pass-through system allows KEPCO to "accumulate such portions and reflect them in what is called the total comprehensive cost."  GOK IQR at Exhibit E-2 at 6.  The total comprehensive cost is then used to calculate the cost recovery rate going forward and to establish the Base Charge and Usage Charge of KEPCO's electricity tariff in order to permit recovery of these increased fuel costs in later quarters.  *Id.*

11.     The GOK also explained that KEPCO accumulated portions of the fuel costs that were not charged to its customers through the FCAC in 2021 and included these costs as an item in its total operating cost during the 2022 POR at issue in this appeal.  The total operating cost (including the accumulated fuel costs carried forward from 2021) was then allocated to the costs of each class of electricity to form the basis for calculating the cost recovery rate of each class.  These accumulated costs were included in KEPCO's 2022 cost data to ensure the long-term recovery of fuel costs that had not been fully passed on to its customers in 2021.  These unrecovered fuel costs, however, were already included in KEPCO's 2021 cost data.  Both the 2021 and 2022 KEPCO cost data were on the record, as the GOK had submitted the 2021 cost data in its IQR but then later provided the 2022 cost data in its third supplemental questionnaire.  *See* GOK IQR at Exhibit E-9; GOK 3SQR at Exhibit E-9.1.

12.     On March 5, 2024, Commerce issued its *Preliminary Results*.  *See Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea:  Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2022,* 89 Fed. Reg. 15,825 (Mar. 5,

5

2024) ("*Preliminary Results*"), and accompanying Preliminary Decision Memorandum ("PDM"). In the *Preliminary Results*, Commerce determined that the provision of electricity by the GOK to Hyundai Steel provided a financial contribution and benefit. *Id.* at 26-34. Commerce also preliminarily determined that the provision of electricity was *de facto* specific pursuant to 19 U.S.C. § 1677(5)(D)(iii)(III) because the steel industry allegedly "received a disproportionately large amount of the subsidy." *Id.* at 35. In making its *de facto* specificity determination, Commerce relied upon the electricity consumption data that had been submitted in the GOK's IQR, and not the revised consumption data from the GOK's 2SQR. *See* Memorandum from Kristen Johnson, International Trade Compliance Analyst, AD/CVD Operations, Office III, "Administrative Review of the Countervailing Duty Order on Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea (Korea); 2022: Specificity Analysis of Industrial Electricity Consumption" (Feb. 28, 2024) at Attachment.

13. From June 3, 204 through June 5, 2024, Commerce conducted verification of the GOK, which included verification of the electricity for LTAR program. *See* Memorandum from Laura Griffith & Patrick Barton, International Trade Compliance Analysts, AD/CVD Operations, Office III, "Countervailing Duty Administrative Review of Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Verification of the Questionnaire Responses of the Government of Korea (July 8, 2024) ("GOK Verification Report"). As part of the GOK verification, Commerce verified the electricity consumption data that had been revised in the GOK's 2SQR. *See id.* at 9-10 & Exhibit VE-10.

14. The parties then submitted case briefs on July 18, 2024, including the GOK and Hyundai Steel. *See* Letter from Yoon & Yang LLC to Sec'y Commerce, "Case Brief of the Government of the Republic of Korea" (July 18, 2024) ("GOK's Case Brief"); Letter from

Morris, Manning & Martin, LLP to Sec'y Commerce, "Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea, Case No. C-580-837: Hyundai Steel's Case Brief" (July 18, 2024) ("Hyundai Steel's Case Brief").  In its case brief, the GOK argued that Commerce's determination that the provision of electricity program was *de facto* specific was unlawful.  *See* GOK's Case Brief at 16-23.  The GOK also argued that for its *de facto* specificity analysis Commerce should have relied on the revised electricity consumption data that it had verified.  *See id.* at 23-24.  The GOK also argued that Commerce's benefit determination was unlawful because it included the fuel-cost pass-through amount that was incurred in 2021 as part of its costs for the 2022 POR.  *See id.* at 15-16.  These costs should only have been included one time in 2021 when they were incurred, and thus excluded from the 2022 costs.  In its case brief, Hyundai Steel also argued that the electricity for LTAR program is not *de facto* specific, and that Commerce erred in not using the revised industrial electricity consumption data that was submitted by the GOK and verified by Commerce.  *See* Hyundai Steel's Case Brief at 22-33.[1]

15.     Commerce issued its *Final Results* on September 11, 2024.  In the *Final Results,* Commerce continued to determine that the provision of electricity in Korea was *de facto* specific pursuant to section 771(5A)(D)(iii)(III) of the Act.  Final Decision Mem. at 16-21.  To support its *de facto* specificity determination, Commerce relied on usage data provided by the GOK for the steel industry and the top ten largest electricity consuming industries that reflected their consumption as a proportion of the total amount of electricity consumed in Korea and within the industrial classification.  *See* Memorandum from Kristen Johnson, International Trade

---

[1] Hyundai Steel also raised an argument regarding the cost pass-through in its case brief but is not pursuing that specific issue in this appeal.  *See* Hyundai Steel Case Brief at 33-34. Instead, the cost pass-through issue raised in this appeal is based on the argument made in the GOK's case brief.

Compliance Analyst, AD/CVD Operations, Office III, "Administrative Review of the Countervailing Duty Order on Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea (Korea); 2022: Final Specificity Analysis of Industrial Electricity Consumption" (Sep. 5, 2024). The GOK data was proprietary, but Commerce found that it demonstrated that the steel industry and three other industries combined, consumed a disproportionately large amount of electricity in Korea. *See id.* In its *de facto* specificity analysis, Commerce relied on the original electricity consumption data that had been submitted in the GOK's IQR and not the revised electricity consumption data it had verified. *See id.*; see Final Decision Mem. at 22. Commerce also rejected the GOK's argument that the accumulated fuel costs incurred in 2021 should have been excluded from the 2022 cost data that Commerce used for its cost recovery test. *See* Final Decision Mem. at 24-25.

16. This appeal followed.

## STATEMENT OF CLAIMS

17. This Court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1).

18. Commerce's *Final Results* are unsupported by substantial evidence and are otherwise not in accordance with law in the following respects:

### Count One

19. Paragraphs 1 through 18 are incorporated by reference as if fully set forth herein.

20. Commerce's determination that the provision of electricity for LTAR was *de facto* specific under section 771(5A)(D)(iii)(III) of the Act is unsupported by substantial evidence and is otherwise not in accordance with law.

8

## Count Two

21. Paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

22. Commerce's determination to rely on the original electricity consumption data for purposes of its *de facto* specificity determination is unsupported by substantial evidence and is otherwise not in accordance with law.

## Count Three

23. Paragraphs 1 through 22 are incorporated by reference as if fully set forth herein.

24. Commerce's determination that the provision of electricity for LTAR provided a benefit under section 771(5)(E) of the Act is unsupported by substantial evidence and is otherwise not in accordance with law.

**PRAYER FOR RELIEF**

25. WHEREFORE, Plaintiff Hyundai Steel respectfully requests that this Court:

   a. Hold Commerce's *Final Results* unsupported by substantial record evidence and otherwise not in accordance with law;

   b. Remand the *Final Results* to Commerce for a redetermination consistent with the judgment and findings of this Court; and

   c. Provide such other relief as this court deems appropriate.

Respectfully submitted,

**MORRIS MANNING & MARTIN LLP**
1333 New Hampshire Avenue, NW, Suite 800
Washington, D.C. 20036
(202) 216-4116

/s/ Brady W. Mills
Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Ryan R. Migeed

*Counsel to Hyundai Steel Company.*

Dated: November 12, 2024